UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-0115

FRED NEKOUEE, individually,      :
      :
      Plaintiff,      :
      :
vs.      :
      :
GKT FOX CREEK VILLAGE, L.L.C., a      :
Missouri limited liability company;      :
      :
DILLON COMPANIES, LLC, a Kansas limited :
liability company;      :
      :
and      :
      :
WALGREEN CO., an Illinois corporation;      :
      :
      Defendants.      :
_____:
      :

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendants GKT FOX CREEK VILLAGE, L.L.C., a Missouri limited liability company;

DILLON COMPANIES, LLC, a Kansas limited liability company; and WALGREEN CO., an

Illinois corporation (sometimes referred to as "Defendants"), for injunctive relief, and attorney's

fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C.

§ 12181 et seq. ("ADA").

    1.    Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant GKT Fox Creek Village, L.L.C.'s property, Fox Creek Village, is located at and near 1611 Pace Street, Longmont, Colorado 80504, in Boulder County ("Fox Creek Village").

3.      Defendant Dillon Companies, Inc.'s grocery store, King Soopers, is located at 1611 Pace Street, Longmont, Colorado 80504 and is in Fox Creek Village ("King Soopers").

4.      Defendant Walgreen Co.'s store, Walgreens, is located at 835 E. 17th Street, Longmont, Colorado 80504 and is in Fox Creek Village ("Walgreens").

5.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.  The Defendants' properties and facilities are located in and do business within this judicial district.

6.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

7.      Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E) and (F), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

8.      Fox Creek Village is a place of public accommodation.

9.      King Soopers is a place of public accommodation.

10.     Walgreens is a place of public accommodation.

11.     Defendants are responsible for complying with the obligations of the ADA.

12.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple

sclerosis and requires the use of a wheelchair for mobility.

13.     Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

14.     Fred Nekouee has visited the property which forms the basis of this lawsuit on August 3, 2018 and September 30, 2018, and he bought goods and sought to avail himself of the services at Fox Creek Village, King Soopers, and Walgreens on such dates.

15.     Fred Nekouee visited, bought goods and food and sought to avail himself of the services at Nicolo's Pizza, Vino Cellars Wine and Spirits, and Subway in Fox Creek Village on August 3, 2019.

16.     Fred Nekouee attended a heavy equipment auction in the area on October 3, 2018, and he visited Rocky Mountain National Park on October 2, 2018.

17.     Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

18.     The Plaintiff has definite plans to return to the area and to the Fox Creek Village, King Soopers, and Walgreens in early February of 2019.

19.     Fox Creek Village, King Soopers, Walgreens, Nicolo's Pizza, Vino Cellar's Wine and Spirits, and Subway are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

20.     The Plaintiff likes to shop at Walgreens to buy personal supplies and small gifts while traveling, and since Walgreens is a chain, he generally knows that it carries what he likes and needs.

21.    The Plaintiff plans to return to Walgreens to shop again.

22.    While traveling, the Plaintiff likes to buy grocery items that he can take back to his hotel room from grocery stores like King Soopers.

23.    The Plaintiff likes the breadth of grocery offerings at King Soopers.

24.    The Plaintiff plans to return to King Soopers to buy groceries again.

25.    The Plaintiff also likes the pizza at Nicolo's Pizza and the food at Subway in Fox Creek Village.

26.    For the reasons set forth in paragraphs 13-25 and 37, Fred Nekouee plans to return to the Fox Creek Village, King Soopers, and Walgreens.

27.    The Plaintiff has encountered architectural barriers at the subject property and places of public accommodation.

28.    The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms in King Soopers and Walgreens.

29.    The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

30.    The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

31.    Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

32.    On his visits to the Fox Creek Village, the Plaintiff encountered excessively steep slopes in its parking lot, access aisles, ramps and walkways.

33. The Plaintiff encountered and observed barriers to access at and in the men's restroom in King Soopers; and so, he also tried to use the women's restroom in King Soopers, in which women's restroom he also encountered and observed barriers to access.

34. The Plaintiff encountered and observed barriers to access the men's restroom in Walgreens; and so, he also tried to use the women's restroom in Walgreens, in which women's restroom he also encountered and observed barriers to access.

35. The Plaintiff is deterred from visiting the Fox Creek Village even though he enjoys its goods and services, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

36. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 41 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

37. Fred Nekouee desires to visit the Fox Creek Village not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

38. The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

39. The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26,

1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

40.     Preliminary inspections of the Fox Creek Village, King Soopers, and Walgreens have shown that violations of the ADA exist.

41.     The violations of the ADA that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.   In the parking lot, the parking space for disabled patrons in front of Walgreens shown in the photograph below has a running slope as steep as about 1:28.6 (3.5%) and a cross slope as steep as about 1:29.4 (3.4%).   These slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered these steep slopes in this parking space, and it made his wheelchair unstable.



b.   In the parking lot, the parking space for disabled patrons in front of Walgreens

shown in the photograph below has a running slope as steep as about 1:21.3 (4.7%).   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this steep slope in this parking space, and it made his wheelchair unstable.



c.   In the parking lot, the parking space for disabled patrons in front of King Soopers has a running slope as steep as about 1:21.7 (4.6%).   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff observed this condition, and it deters him from visiting King Soopers.

d.   In the parking lot, the parking space for disabled patrons in front of Walgreens shown in the photograph below has a running slope as steep as 1:20 (5%).   This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this slope, and it deters him from visiting Walgreens.





e.     In the parking lot, the change in elevation in the access aisle of the parking space for disabled patrons in front of Walgreens shown in the photographs below is about 0.75 inches and greater than a change of level of 0.25 inches.   This access aisle has a change in level of more than 0.25 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.   While moving in his wheelchair, the Plaintiff encountered this change of level and it stopped his wheelchair.





f.    In the parking lot, the change in elevation in the parking space for disabled patrons in front of King Soopers at the utility cap shown in the photographs below is about 0.75 inches and more than a change of elevation of 0.25 inches.   This change of elevation in the access aisle of more than 0.25 inches is in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.   The Plaintiff observed this condition.





g.    In the parking lot, the running slope of the back section (away from the entrance to Walgreens) of the access aisle serving the parking spaces for disabled patrons in front of Walgreens is as steep as about 1:33.3 (3%) and steeper than a slope of 1:48 (2%), and the running slope of this access aisle to the right of the entrance (oriented as one faces the entrance to Walgreens) is as steep as about 1:20.8 (4.8%) and steeper than a slope of 1:48 (2%).   These running slopes in this access aisle exceed the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered

these slopes while moving in this access aisle in his wheelchair, and it made his wheelchair unstable.

     h.    In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Walgreens shown in the photographs below is as steep as about 1:20.8 (4.8%) and steeper than a slope of 1:48 (2%).  This slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this condition, and it deters him from visiting Walgreens.





i.      In the parking lot, the running slope of the middle section of the access aisle serving the disabled parking spaces in front of Nicolo's Pizza is as steep as about 1:25.6 (3.9%) and steeper than a slope of 1:48 (2%).   This running slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation.   It was difficult for the Plaintiff to move in his wheelchair in this access aisle to and from Nicolo's Pizza.

j.      In the parking lot, the parking space for disabled patrons in front of Nicolo's Pizza shown in the photograph below has a running slope as steep as about 1:21.7 (4.6%).   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this slope, and it made it difficult for him to unload from and load into his vehicle.





k.    The running slope of the accessibility ramp in front of King Soopers shown in the

photograph below as steep as about 1:9.8 (10.2%).   The slope of this ramp is steeper than

the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG §

405.2.   The Plaintiff encountered this slope of this ramp while moving in his wheelchair,

and it was very difficult for him to ascend and descend this ramp due to its steep slope.





l.     The transition from the parking space to the accessible route to King Soopers

shown in the bottom photograph in subparagraph (k) above, contains a change in level of

about 1 inch and greater than a change in level of 0.25 inches.   This change of level is in

violation of Federal Law 2010, ADAAG §§ 303.2 and 405.4.   The Plaintiff encountered

this condition while moving in his wheelchair, and the change in level stopped his forward

movement and caused his wheelchair to tip forwards.

m.    In the parking lot, the access aisle serving the disabled parking spaces in front of King Soopers shown in the photographs below is not even and the running slope in the middle section of this access aisle is as steep as about 1:27 (3.7%) and steeper than a slope of 1:48 (2%), and the running slope in the front section (closest to King Soopers as one faces King Soopers) of this access aisle as steep as about 1:10.3 (9.7%) and steeper than a slope of 1:48 (2%).    These running slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.    The Plaintiff encountered these slopes while moving in his wheelchair, and they made his wheelchair unstable, and he required assistance to move his wheelchair up the front section of this access aisle.





n.      In the parking lot, the front section (closest to King Soopers as one faces King Soopers) of the access aisle serving the disabled parking spaces in front of King Soopers shown in the larger photograph in subsection (l) above is not even and its cross slope is as steep as 1:10 (10%) and steeper than a cross slope of 1:48 (2%).   This cross slope of this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this cross slope while moving in this access aisle in his wheelchair, and it made his wheelchair unstable.

o.      In the parking lot, the front section (oriented as one faces King Soopers) of the access aisle serving the disabled parking spaces in front of King Soopers and Wax Studio shown in the photographs below is not even and has a cross slope as steep as about 1:13.2 (7.6%) and steeper than a cross slope of 1:48 (2%).   This cross slope in this access aisle is

steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting Fox Creek Village.





p.    In the parking lot, the cross slope of the access aisle serving the disabled parking

spaces in front of King Soopers and Wax Studio is as steep as about 1:30.3 (3.3%) and steeper than cross slope of 1:48 (2%).   This cross slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting Fox Creek Village.

q.     The running slope of the walking surface in front of Nicolo's Pizza is as steep as about 1:8.9 (11.2%) and steeper than a slope of 1:20 (5%).   This running slope of this walking surface is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this running slope of this walking surface while moving in his wheelchair to enter and exit Nicolo's Pizza.   This condition made his wheelchair unstable while he was moving in his wheelchair.

r.     The cross slope of the walking surface in front of King Soopers shown in the photograph below is as steep as about 1:21.7 (4.6%) and is steeper than a cross slope of 1:48 (2%).   This cross slope of this walking surface is steeper than the maximum allowed cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this cross slope of this walking surface while moving in his wheelchair, and it made his wheelchair unstable.



s.     The cross slope of the walking surface in front of Subway and Vino Cellars Wine and Spirits is as steep as about 1:25 (4%) and steeper than a cross slope of 1:48 (2%).   This cross slope of this walking surface is steeper than the maximum allowed slope of 1:48 (2%) in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this condition while moving in his wheelchair to buy food at Subway, and this slope made his wheelchair unstable.

t.     The cross slope of the walking surface in front of King Soopers is as steep as about 1:23.8 (4.2%) and steeper than a cross slope of 1:48 (2%).   This cross slope of this walking surface is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition.

u.     In the parking lot, the curb ramp in front of Walgreens projects into the parking

access aisle.   This curb ramp projects into the access aisle, in violation of Federal Law 2010, ADAAG § 406.5.   The Plaintiff encountered this curb ramp while moving in his wheelchair, and it endangered his safety.

v.     The running slope of the ramp on the accessible route to Nicolo's Pizza in front of Nicolo's Pizza is as steep as about 1:8.5 (11.8%) and steeper than a slope of 1:12 (8%). This running slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this slope while moving in his wheelchair.

w.     The slope of the curb ramp side or flare on the accessible route to Walgreens in front of Walgreens is as steep as about 1:5.3 (18.9%) and steeper than a slope of 1:10 (10%).   The slope of this accessibility curb ramp flare is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff encountered this curb ramp flare while moving in his wheelchair, and due to its slope, it endangered his safety.

x.     The slope of the curb ramp side or flare on the accessible route in front of Nicolo's Pizza is as steep as about 1:5.8 (17.1%) and steeper than a slope of 1:10 (10%). This slope of this curb ramp side or flare on the accessible route to Nicolo's Pizza is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff encountered this condition while moving in his wheelchair, and it endangered his safety.

y.     The top landing of the ramp on the accessible route in front of Subway and Vino Cellars Wine and Spirits has slope as steep as about 1:25 (4%) and steeper than a slope of 1:48 (2%).   The slope of this top landing of this ramp is steeper than the maximum allowed

slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG 405.7.1.   In his wheelchair, the Plaintiff encountered this landing, and he could not rest in his wheelchair on this top landing due to its slope.

z.     The width of the walking surface in front of Subway and Vino Cellars Wine and Spirits shown in the photographs below is blocked by an outcrop of the building and is about 18 inches wide and less than 36 inches wide.   The width of this walking surface is less than the minimum required width of 36 inches, in violation of Federal Law 2010, ADAAG § 403.5.1.   The Plaintiff encountered this narrow walking surface while moving in his wheelchair, and he required assistance to prevent his wheelchair from overturning sideways while moving past the building outcrop.





aa.    The slope of the surface within Walgreens' entrance door maneuvering space of 60 inches is about 1:21.7 (4.6%) and steeper than a slope of 1:48 (2%).   The slope of this maneuvering space is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 404.2.4.4.   The Plaintiff encountered this slope, and it caused his wheelchair to slip sideways while he was trying to enter Walgreens in his wheelchair.

**MEN'S RESTROOM IN KING SOOPERS**

bb.    The time for the entrance door to the men's restroom in King Soopers to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds.   The time for the door closer to move this restroom door to a position of 12 degrees from an open position of 90 degrees is less than the minimum allowed time

of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   It was difficult for the Plaintiff to enter this door due to the short time it remains open, and he had to block the door with the side of his wheelchair to prevent the door from fully closing.

cc.   In the men's restroom in King Soopers, the restroom door pull side maneuvering clearance in a font approach beyond the latch and parallel to the doorway is blocked by a trash can and is less than such clearance of 18 inches.   This pull side maneuvering clearance is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   Care must be taken, in the form of a written policy, to prevent this maneuvering clearance from being blocked by trash cans.   The Plaintiff encountered this trash can and lack of this door pull side maneuvering clearance, and he required assistance to exit the restroom while in his wheelchair.

dd.   In the men's restroom in King Soopers, a door pull is not provided on both sides of the door to the accessible toilet compartment near the latch.   This condition is in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff encountered this condition, and due to it, he could not fully close the door to this compartment.

ee.   In the men's restroom in King Soopers, the side wall grab bar in the accessible toilet compartment only extends 49 inches from the rear wall and does not extend a minimum of 54 inches from the rear wall.   This condition is in violation of Federal Law 2010, ADAAG § 604.5.1.   Due to the lack of extension from the rear wall, it was difficult for the Plaintiff to use this side wall grab bar to support himself as he transferred from his wheelchair to the toilet and back from the toilet to his wheelchair.

ff.   In the men's restroom in King Soopers, the top gripping surface of the rear wall grab bar in the accessible toilet compartment is higher than 36 inches above the finish floor.

The top of this rear wall grab bar is not between a minimum of 33 inches and a maximum of 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4. Due to its height above the floor, the Plaintiff had difficulty using this rear wall grab bar.

gg.   In the men's restroom in King Soopers, the top gripping surface of the side wall grab bar in the accessible toilet compartment is higher than 36 inches above the finish floor. The top of this rear wall grab bar is not between a minimum of 33 inches and a maximum of 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4. Due to its height above the floor, the Plaintiff had difficulty using this side wall grab bar.

hh.   In the men's restroom in King Soopers, the space underneath the sinks is blocked by trash bins.   The lavatory sinks do not have clear floor space to provide the minimum required knee and toe clearance, in violation of Federal Law 2010, ADAAG §§ 305 and 306.2.3.   Care must be taken, in the form of a written policy, not to block the clearance space under the lavatory sinks with trash bins that prevent an individual in a wheelchair from making a forward approach to the sinks.   The design of the sinks with holes for trash in the counter may need to be modified.   The Plaintiff encountered trash bins under these sinks and they prevented him from making a forward approach in his wheelchair to use a sink.

ii.   In the men's restroom in King Soopers, the urinal clear floor space width in the alcove urinal is about 30 inches and less than 36 inches.   The clear floor space to this alcove urinal (confined on all or part of three sides where the depth exceeds 24 inches) is less than the minimum required width of 36 inches, in violation of Federal Law 2010, ADAAG §§ 305.7.1 and 305.7.2.   The Plaintiff observed this condition, and it deters him from visiting King Soopers.

jj.   In the men's restroom in King Soopers, the space between the top of the side wall grab bar and the toilet paper dispenser above it is less than 12 inches.   The space between the top of this side wall grab bar and the toilet paper dispenser above it is less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   The Plaintiff encountered this condition, and it made it difficult for him to use this side wall grab bar to transfer from his wheelchair to the toilet and back again.

kk.   In the men's restroom in King Soopers, the space between the top of the rear wall grab bar and the toilet seat cover dispenser above it is less than 12 inches.   The space between the top of this rear wall grab bar and the toilet seat cover dispenser above it is less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   The Plaintiff encountered this condition, and it made it difficult for him to use this rear wall grab bar to transfer from his wheelchair to the toilet.

ll.   In the accessible toilet compartment in the men's restroom in King Soopers, the centerline of where toilet paper is dispensed is not between 7 and 9 inches from the front of the toilet.   This condition is in violation of Federal Law 2010, ADAAG § 604.7.   Due to this condition, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

**WOMEN'S RESTROOM IN KING SOOPERS**

mm.   The force needed to open the women's restroom door in King Soopers is about 8 pounds and more than 5 pounds.   The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Due to the force necessary to open the door to the women's restroom,

the Plaintiff had difficulty opening this door.

nn.   In the women's restroom in King Soopers, as shown in the photograph below, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by the metal tampon dispenser box and is less than 18 inches.   This door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches, in violation of federal Law 2010, ADAAG § 404.2.4.   This lack of clearance made it very difficult for the Plaintiff to maneuver his wheelchair to exit the restroom.



oo.   In the women's restroom in King Soopers, the clear floor space underneath the sinks is blocked by trash bins.   Clear floor space underneath the sinks for knee and toe clearance is not provided, in violation of Federal Law 2010, ADAAG §§ 305 and 306.2.3. The Plaintiff encountered these trash bins underneath the counter for the sinks, and due to them, he could not make a forward approach in his wheelchair to use the sink.

pp.   In the women's restroom in King Soopers, as shown in the photograph below, the

lavatory pipes under one of the sinks are not insulated.  This lack of insulation is in violation of Federal Law 2010, ADAAG § 606.5.  In his wheelchair, the Plaintiff encountered this lack of insulation, and due to the lack of insulation he risked skin burns and injury to his legs when he used the sink.



qq.  In the women's restroom in King Soopers, the space between the top of the side wall grab bar and the toilet paper dispenser above it is less than 12 inches.  This condition is in violation of Federal Law 2010, ADAAG § 609.3.  The Plaintiff observed this condition.

rr.  In the women's restroom in King Soopers, the space between the top of the rear wall grab bar and the toilet seat cover dispenser above it is about 4 inches and less than 12 inches.  The space between the top of the rear wall grab bar and the toilet seat cover dispenser above it is less than 12 inches, in violation of Federal Law 2010, ADAAG §

609.3.   The Plaintiff encountered this condition, and it make it difficult for him to use the rear wall grab bar to transfer from his wheelchair to the toilet.

ss.   In the women's restroom in King Soopers, the toilet paper dispenser centerline is not between 7 and 9 inches from the front of the water closet.   This condition is in violation of Federal Law 2010, ADAAG § 604.7.   Due to the location of the toilet paper dispenser, the Plaintiff had to grab some toilet paper before he sat on the toilet.

tt.   In the women's restroom in King Soopers, the twist lever of the paper towel dispenser is about 53 inches above the floor and higher than 48 inches above the floor. The twist lever for the paper towel dispenser is higher than 48 inches (1220 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   Due to its height above the floor, from his wheelchair, the Plaintiff could not use the lever to dispense a paper towel.

**MEN'S RESTROOM IN WALGREENS**

uu.   The force needed to open the entry door to the restroom area in Walgreens is about 8 pounds and more than 5 pounds.   The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Due to the force necessary to open it, the Plaintiff had difficulty opening this entry door.

vv.   The force needed to open the men's restroom door in Walgreens is about 7 pounds and more than 5 pounds.   The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Due

to the force necessary to open it, the Plaintiff had difficulty opening this door to the men's restroom.

ww.     The time for the entrance door to the men's restroom in Walgreens to close from an open position of 90 degrees to 12 degrees from the latch is about 3.5 seconds and less than 5 seconds.   The time for the door closer to move this restroom door to a position of 12 degrees from an open position of 90 degrees is less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   It was difficult for the Plaintiff to enter this door due to the short time it remains open, and he had to block the door with the side of his wheelchair to prevent the door from fully closing.

xx.   In the men's restroom in Walgreens, a door pull is not provided on both sides of the door to the accessible toilet compartment near the latch.   A door pull is not provided on both sides of this door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   Due to the lack of door pulls on this door, the Plaintiff had difficulty opening and closing this door.

yy.   In the men's restroom in Walgreens, the rear wall grab bar does not extend a minimum of 12 inches on one side and 24 inches on the other side from the centerline of the water closet or toilet.   This condition violates Federal Law 2010, ADAAG § 604.5.2. The Plaintiff observed this condition.

zz.   In the men's restroom in Walgreens, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   This condition is in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff observed this condition.

**WOMEN'S RESTROOM IN WALGREENS**

aaa.     In the women's restroom in Walgreens, the restroom door pull side

maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by a trash can and is less than 18 inches.   This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.   Care must be taken, incorporated in a written policy, not to block this maneuvering clearance space with trash cans.   Due to the location of this trash can, the Plaintiff required assistance to exit this restroom in his wheelchair.

bbb.      In the women's restroom in Walgreens, a door pull is not provided on both sides of the accessible toilet compartment door near the latch.   This condition is in violation of Federal Law 2010, ADAAG § 604.8.1.2.   Due to the lack of door pulls, the Plaintiff had difficulty opening this door and he could not fully close this door when he used the toilet.

ccc.      In the women's restroom in Walgreens, the rear wall grab bar does not extend 12 inches on one side and 24 inches on the other side of the centerline of the water closet.   This condition is in violation of Federal Law 2010, ADAAG § 604.5.2.   The Plaintiff encountered this rear wall grab bar.

ddd.      In the women's restroom in Walgreens, the centerline of the toilet paper dispenser (and where the toilet paper is dispensed) is not between 7 and 9 inches from the front of the water closet.   The location of this toilet paper dispenser is in violation of Federal Law 2010, ADAAG § 604.7.   Due to its location, the Plaintiff could not reach toilet paper from a normal sitting position in the toilet.

**MEN'S RESTROOM IN NICOLO'S PIZZA**

eee.      The men's restroom in Nicolo's Pizza does not have signage with the international symbol of accessibility.   This men's restroom lacks signage with the symbol of international accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   The

Plaintiff observed this lack of signage, and it deters him from visiting Nicolo's Pizza.

fff.   In the men's restroom in Nicolo's Pizza, the paper towel dispenser motion detector and outlet are about 54 inches above the floor and the motion detector does not work at 48 inches above the floor.   This condition is in violation of Federal Law 2010, ADAAG § 308.2.1.   When he washed his hands in Nicolo's Pizza, the Plaintiff could not obtain a paper towel from this dispenser on his own due to this condition.

ggg.      In the men's restroom in Nicolo's Pizza, the coat hook is about 68 inches above the floor and higher than 48 inches above the floor.   This coat hook is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff observed this condition.

**WOMEN'S RESTROOM IN NICOLO'S PIZZA**

hhh.      The women's restroom in Nicolo's Pizza does not have signage with the international symbol of accessibility.   This lack of signage is in violation of Federal Law 2010, ADAAG § 703.7.2.1.   The Plaintiff observed this condition.

**ENTRANCE DOOR TO SUBWAY AND INTERIOR FOOD SERVICE AREA**

iii.   The force needed to open the entrance door to Subway is about 10 pounds and more than 5 pounds.   The force needed to open this door is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Due to the force necessary to open it, the Plaintiff had difficulty opening this door, and he required assistance to enter Subway.

jjj.   In Subway, the soda machine dispenser water key is about 57 inches above the floor and higher than 48 inches above the floor.   This soda machine dispenser water

dispenser key is higher than the maximum allowed height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff could not reach and use this waster dispenser key due to its height above the floor.

**RESTROOMS IN SUBWAY**

kkk.        As shown in the photographs below, both the men's and women's restrooms in Subway do not have signage with the international symbol of accessibility.   This lack of signage is in violation of Federal Law 2010, ADAAG § 703.7.2.1.   The Plaintiff observed this lack of signage, and it deters him from visiting Subway.





42.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

43.    The discriminatory violations described in paragraph 41 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act.

44.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the

Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

45.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

46.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

47.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

48.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

49.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation

that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

50.    Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

51.    Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Fox Creek Village, places of public accommodation in Fox Creek Village, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.    The Court issue a Declaratory Judgment that determines that the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. at the commencement of the subject lawsuit.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*